UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                               :

ASSOCIATION OF HOME APPLIANCE      :
MANUFACTURERS,                            :

                       Plaintiff,      :            13 Civ. 07888 (LGS)
                                                 :

          -against-                :           OPINION AND ORDER
                                                 :

THE CITY OF NEW YORK,               :
                       Defendant.     :
                                                 :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

     In August 2013, the City adopted Local Law 69, which makes manufacturers responsible for recovering refrigerants from their residential appliances that are discarded in New York City. Plaintiff Association of Home Appliance Manufacturers ("AHAM") brings this declaratory judgment action against Defendant City of New York (the "City") to challenge the validity of Local Law 69 under New York and federal law. Plaintiff moves for judgment on the pleadings with respect to its claims that Local Law 69 is *ultra vires* (i.e, beyond the City's legislative power) and is preempted by the New York Environmental Conservation Law ("NYECL").

     The Court finds that the City's effort to promote the safe disposal within its borders of potentially harmful refrigerants is a reasonable exercise of the City's police powers, at least for purposes of this motion. Those powers entitle the City to enact laws that protect the safety, health and well-being of the community, which Local Law 69 does. However, the NYECL, which is a state law, contains a provision that broadly preempts city laws governing the "sale, use, reuse, reclamation, or disposal of chlorofluorocarbon compounds." N.Y. Envtl. Conserv. Law § 38-0107(3). Absent an amendment of that provision by the New York legislature, Local Law 69 is unenforceable with respect to those chlorofluorocarbon ("CFC") compounds covered by Article 38 of the NYECL. Local Law 69 shall continue to be valid and enforceable insofar as it governs

refrigerants that do not use the CFC compounds specified in Article 38 of the NYECL.  For these reasons, as further discussed below, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

The following facts are based on Defendant's Answer to the extent that it admits allegations in the Complaint, uncontested documents attached to or incorporated by reference in the pleadings, and documents of which the Court takes judicial notice.

## I.      History of Refrigerant Regulation

Certain appliances, including refrigerators, freezers, air conditioners and dehumidifiers, use refrigerants in the CFC, hydrochlorofluorocarbon ("HCFC") or hydrofluorocarbon ("HFC") chemical families to perform their cooling functions.  Following the discovery that CFCs are ozone-depleting substances, CFCs and HCFCs became subjects of regulation under the Montréal Protocol on Substances that Deplete the Ozone Layer, ratified by the United States in 1988, and the federal Clean Air Act.  Under the Clean Air Act, the production and consumption of CFCs have been banned since 2000, 42 U.S.C. § 7671c(b)-(c), and the production and consumption of HCFCs will be completely phased out by 2030, 42 U.S.C. § 7671d(b)-(c).  CFCs and HCFCs commonly have been substituted by HFCs, which do not deplete the ozone layer.

For a period in the 1990s, the City of New York vented refrigerants into the atmosphere when picking up discarded residential appliances as part of its appliance recycling program.  In 2000, the U.S. Environmental Protection Agency ("EPA") and the City entered into a consent decree providing in relevant part that the "[t]he City shall comply at all times with Section 608 of the Clean Air Act, and the regulations set forth at 40 C.F.R. Part 82, Subpart F . . . ."  Thereafter, the City instituted a system in which it instructs residents to place appliances to be discarded at the curb before collection day, and sends separate fleets of trucks and employees to recover the

refrigerants and the appliances respectively.  The City generates revenue from this program

through an agreement with a recycling contractor.

## II.     Local Law 69

In August 2013, Mayor Bloomberg signed the bill that became Local Law 69, amending

Title 16 of the Administrative Code of the City of New York by adding §§ 16-480 through 16-

486.  Local Law 69 (the "Law") makes manufacturers responsible for recovering refrigerants

from their residential appliances that are discarded in New York City.  N.Y.C. Admin. Code § 16-

481(a).  Manufacturers may develop their own recovery programs, whether by themselves or in

conjunction with one another, or pay the City a fee when the Department of Sanitation ("DSNY")

makes the collection.  *Id.* §§ 16-481(b), -482(c).  A manufacturer's own program may not include

the curbside pickup of appliances.  *Id* § 16-482(c).

The Law applies to manufacturers "(1) . . . whose brand name appears on an appliance

sold, offered for sale or distributed in the city or (2) . . . who manufacture[] or has manufactured

an appliance sold, offered for sale or distributed in the city."  *Id.* § 16-480.  Under the Law,

"refrigerants"

> means any substances consisting in whole or in part of a class I or class II ozone-
> depleting substance, which are used for heat transfer purposes and provide a
> cooling effect, including, but not limited, to chlorofluorocarbons, hydro-
> chlorofluorocarbons, or any other substitute substance as may be defined by the
> United States environmental protection agency.  A class I or class II ozone-
> depleting substance shall be those substances as defined by the United States
> environmental protection agency in section 602 of the United States clean air act.
> A "substitute substance" shall be any environmental protection agency approved
> replacement for a class I or II ozone-depleting substance in a refrigeration or air-
> conditioning end-use.

*Id.*

The Law contains a severability provision in the event that any part of it is determined to

3

be invalid:

> If any provision of this local law shall be adjudged to be unconstitutional or invalid, such judgment shall not affect, impair or invalidate the remainder thereof, but shall be confined in its operation to the provision directly involved in the controversy in which such judgment shall have been rendered.

*Id.* § 16-486.

Section 16-485 authorizes the DSNY to promulgate implementing rules. The Final Rules Governing the Recovery of Refrigerants became effective on June 1, 2014.

## III.  Legislative History

Bill No. Int. 894-2012 ("Bill 894"), as Local Law 69 was known prior to its passage, was considered by the City Council Committee on Sanitation and Solid Waste Management ("Committee") along with three other bills at a hearing on June 29, 2012. The other three bills respectively concerned the theft of manhole covers, the poaching of recyclables and the collection of beverage containers. The Committee's report for the June 29 hearing, as well as statements made at the hearing itself, characterized the four bills as part of the City's effort to combat the increase in the curbside theft and poaching of recyclable materials, which reduced the amount of high-value recyclables collectable by the DSNY.

Specifically with respect to Bill 894, speakers at the hearing expressed concern about the environmental impact of ozone-depleting substances being released into the atmosphere by poachers who steal discarded appliances. A representative of the Natural Resources Defense Council stated that Bill 894 "would reduce the likelihood that stolen bulk metal items like refrigerators and air conditioners are improperly disassembled, with the inevitable result being the release of . . . CFCs, which are potent ozone depleting gases, into the atmosphere." The Committee also heard testimony that Bill 894 would help with the City's finances. Ron Gonen, the DSNY's Deputy Commissioner for Sustainability and Recycling, stated that Bill 894 "would

4

allow for the shift of part of the financial burden for the recovery to manufacturers of refrigerant containing products" and for the DSNY to "recover a portion of its program costs for continuing to operate its CFC removal program . . . ."

## IV.    Procedural History

Plaintiff AHAM is a not-for-profit business association incorporated in Illinois and having its principal office in Washington, D.C.  It represents manufacturers of home appliances, and its members produce 95 percent of the household appliances shipped for sale in the United States. On November 6, 2013, Plaintiff commenced this action seeking a declaratory judgment that: (i) Local Law 69 is preempted by NYECL § 38-0107(3); (ii) § 16-481, regarding manufacturer responsibility for recovery, is *ultra vires* under the constitution and legislative acts of New York State; (iii) § 16-482(b) and (c), regarding fees chargeable to manufacturers under the City collection program, are *ultra vires* under the constitution and legislative acts of New York State; (iv) §§ 16-481 and 16-482(c) violate manufacturers' due process rights under the U.S. and New York constitutions; and (v) Local Law 69 violates the Commerce Clause of the U.S. Constitution. On February 7, 2014, Plaintiff moved for judgment on the pleadings as to the first three causes of action, which all arise under state law.

## STANDARD

The Court reviews motions for judgment on the pleadings brought pursuant to Rule 12(c) of the Federal Rules of Civil Procedure under the same standard as Rule 12(b)(6) motions to dismiss.  *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).  The Court accepts as true all of the nonmoving party's well-pleaded factual allegations and draws all reasonable inferences in favor of the nonmoving party.  *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011).  Judgment on the pleadings may be

granted "where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988).

On a Rule 12(c) motion, the court may consider "the complaint, the answer, any written documents attached to them, . . . any matter of which the court can take judicial notice for the factual background of the case[,] . . . any written instrument attached . . . as an exhibit, materials incorporated . . . by reference, and documents that, although not incorporated by reference, are integral" to the pleadings. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted). Judicial notice may be taken of material that is a matter of public record, *see Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004), such as legislative history, *see, e.g.*, *Castellano v. Bd. of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 754 (2d Cir. 1991) (taking judicial notice of pertinent statutory material on an appeal from a motion to dismiss); *Oneida Indian Nation v. New York*, 691 F.2d 1070, 1086 (2d Cir. 1982) (holding that judicial notice of "law, legislative facts, or factual matters that are incontrovertible" are admissible).

## **DISCUSSION**

### I.   **Police Powers**

Plaintiff seeks declaratory judgment on the pleadings as to its second and third claims – that § 16-481, regarding manufacturer responsibility for recovery, and § 16-482(b) and (c), regarding fees chargeable to manufacturers under the City's collection program, are *ultra vires* under the constitution and legislative acts of New York State. The City argues that it has authority under state law to enact Local Law 69 pursuant to its delegated police powers. Plaintiff's motion is denied with respect to these two claims because it is not possible to

6

conclude, based on the materials the Court is permitted to consider on this motion and drawing all reasonable inferences in favor of the City, that Local Law 69 is an unlawful exercise of the City's police powers.

Police powers repose with the states. *See* U.S. Const. amend. X; *United States v. Morrison*, 529 U.S. 598, 618 (2000) (holding that "the Founders undeniably left" police powers "reposed in the States"). New York State delegates certain of such powers – e.g., legislative authority relating to local safety, health and well-being – to its municipalities through the state constitution, the Municipal Home Rule Law and the General Cities Law.[1] Municipal governments in New York have lawmaking powers only insofar as such powers are granted by the state. *Albany Area Builders Ass'n v. Town of Guilderland*, 546 N.E.2d 920, 921 (N.Y. 1989) ("It is a familiar principle that the lawmaking authority of a municipal corporation, which is a political subdivision of the State, can be exercised only to the extent it has been delegated by the State."); *Kamhi v. Town of Yorktown*, 547 N.E.2d 346, 347 (N.Y. 1989) ("In general, towns have only the lawmaking powers the [New York] [l]egislature confers on them."). The New York constitution and the Municipal Home Rule Law require that these powers granted to local governments be "liberally construed." N.Y. Const. art. IX § 3(c); N.Y. Mun. Home Rule Law art. 6 § 51.

To be a valid exercise of police power, a municipal legislative act must bear a reasonable

---

[1] Municipalities are authorized to adopt laws relating to, *inter alia*, the "government, protection, order, conduct, safety, health and well-being of persons or property therein," N.Y. Const. art. IX, § 2(c)(10); *accord* N.Y. Mun. Home Rule Law art. 2 § 10(ii)(12); the "management and use of [their] highways, roads, streets, avenues and property," *id.* art. 2 § 10(ii)(6); the "protection and enhancement of [their] physical and visual environment," *id.* art. 2 § 10(ii)(11); the "regulat[ion], manage[ment] and control [of their] property and local affairs," N.Y. Gen. City Law art. 2-A § 19(1); and the "maint[enance of] order, enforce[ment of] the laws, protect[ion of] property and preserv[ation] and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto," *id.* art. 2-A § 20(13).

relationship to a legitimate purpose within the City's police powers – e.g., the promotion of the health, safety, well-being or welfare of the community.  *See Good Humor Corp. v. City of N.Y.*, 49 N.E.2d 153, 155 (N.Y. 1943) ("Local laws are valid which have a substantial relation to matters within the field where legislative power is vested in the local legislative body of the city by the Constitution and statutes of New York.  They must be reasonably calculated to achieve a legitimate public purpose."); *accord People v. Cook*, 312 N.E.2d 452, 456 (N.Y. 1974) (finding that a New York City law requiring vendors to vary the prices of cigarettes based on tar and nicotine content was a valid exercise of its delegated police powers to promote health because the law has a "reasonable relation" to health); *Albany Area Builders Ass'n v. Town of Guilderland*, 534 N.Y.S.2d 791, 794 (App. Div. 1988) ("In order for a local law to come within the police power of a municipality . . . , it must bear a reasonable relationship to the objective sought to be promoted, i.e., public safety, health or welfare."), *aff'd*, 546 N.E.2d 920; *see also USA Baseball v. City of N.Y.*, 509 F. Supp. 2d 285, 298 (S.D.N.Y. 2007) (finding that an ordinance banning the use of metal bats in high school baseball games is a valid exercise of the City's police powers because it reasonably relates to the protection of public health and safety).  A municipality's police powers are not coextensive with that of the state, but "limited to matters of an inherently local nature . . . ."  *Kamhi*, 547 N.E.2d at 351.  Moreover, a municipality's purported exercise of its police powers must be reasonable.  *See Good Humor Corp.*, 49 N.E.2d at 156 ("The fundamental question remains whether [the local law in question] is reasonable."); *see also People v. A & C Trucking Co.*, 390 N.Y.S. 2d 987, 995 (City Ct. 1977) ("All police regulations must be reasonable under all circumstances.  The principle is, of course, fully applicable to legislation on the municipal level.").

### A.    Reasonable Relationship

Courts have consistently held that waste disposal is subject to regulation by municipalities pursuant to their police powers. *See Riley v. Monroe Cnty.*, 371 N.E.2d 520, 522 (N.Y. 1977) (characterizing waste disposal as an issue that "certainly affects the health and welfare of [the county's] citizens" and is therefore subject to its police powers); *Jamaica Recycling Corp. v. City of N.Y.*, 816 N.Y.S.2d 282, 291 (Sup. Ct. 2006) (collecting "a long line of cases which hold that, in the exercise of their police powers, municipalities may regulate the disposal of solid waste"), *aff'd*, 832 N.Y.S.2d 40 (1st Dep't App. Div. 2007); *cf. United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 344 (2007) (holding that two New York counties' ordinances governing the flow of solid waste does not violate the Commerce Clause, in part because "[w]aste disposal is both typically and traditionally a local government function" (alteration in original) (internal quotation marks omitted)); *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1275 (2d Cir. 1995) ("For ninety years, it has been settled law that garbage collection and disposal is a core function of local government in the United States.").

There can be no question about the City's authority under its police powers to deal with refuse within its borders, as these cases make clear. Nor does there seem to be any doubt about the City's authority to prescribe, as it has for many years, the manner of disposal for cooling appliances and their refrigerants. As the legislative history shows, the safe disposal of refrigerants is an issue of particular concern in the City's management of its waste, as their illegal venting – exacerbated by poaching – causes environmental damage. Local Law 69 is plainly designed to improve the management of refrigerants as waste and address the consequences of their improper disposal in New York City, and therefore bears a reasonable relation to the promotion of the community's health and welfare and the protection of the physical environment.

9

Plaintiff argues that Local Law 69 exceeds the City's police powers because the environmental interests threatened by certain refrigerants result from ozone depletion, which is a national and global problem.  While the release of refrigerants in New York City may well have an environmental impact beyond the city's borders, the refrigerants at issue are located in appliances discarded in the city.  These appliances and their refrigerants constitute waste within the city limits, and the City must manage the disposal of such waste as well as the complications to that disposal process caused by the documented surge in poaching.  These are distinctly local issues.  Local issues otherwise addressable by a municipality's exercise of police powers cannot be immunized from local regulation simply because the problem's negative consequences spill beyond the borders of the municipality.

Plaintiff also argues that Local Law 69 fails the reasonable relationship test because it allegedly does not further what Plaintiff characterizes as the City's proffered rationale for the Law – to reduce the poaching of high-value recyclables.  Plaintiff argues that the true motive of the City is to generate revenue by shifting the cost of refrigerant recovery from the City to manufacturers.  The City responds that it had other motives.  These arguments are misplaced. Whether a law falls within the City's police powers does not depend on the lawmakers' subjective intent or the parsing of their proffered or true motives.  Rather, the test is whether the law bears a *reasonable* relationship to the health, safety or welfare of the community, which waste disposal plainly does.  *See Good Humor Corp.*, 49 N.E.2d at 155-56 (holding that the "[t]he statement of the purpose of the [law in question] in the committee report is not conclusive" and reiterating that the question is whether the law is "reasonably calculated" to achieve a legitimate police power purpose); *cf. Albany Area Builders Ass'n*, 534 N.Y.S.2d at 794 (invalidating a town law requiring certain applicants for building permits to pay fees that go

10

toward capital improvements to and expansions of state and local transportation infrastructure, noting that the relationship between the law and the presumed purpose of promoting public safety was "tenuous" and that the law was instead "aimed at raising revenues"). Moreover, as noted above, while Local Law 69 may not reduce poaching, it is reasonably calculated to address one of the negative effects of poaching – the improper venting of ozone-depleting substances into the atmosphere.

### B.    Reasonableness

The Court likewise is unable to conclude, based on the record before it on this motion and drawing all reasonable inferences in favor of the City, that Local Law 69 is unreasonable as a matter of law.

Plaintiff contends that the payments required of manufacturers under § 16-482(c) are either an unauthorized tax or an impermissible fee for a fictional benefit created by the City's unreasonable reallocation of the responsibility to recover refrigerants. The City asserts that it is not a tax but a permissible fee to reimburse the City for its collection program insofar as the program helps manufacturers fulfill their responsibility under § 16-481(a). Thus, the real dispute concerns whether the City's shifting of the responsibility to recover refrigerants from itself to manufacturers is reasonable – i.e., the "why me" question.

Based on the pleadings and undisputed facts, Plaintiff has not met its burden of showing that it is unreasonable for the City to impose that responsibility on the appliance manufacturers. Local Law 69 places the obligation in question on manufacturers that sell or distribute appliances that contain refrigerants in New York City. N.Y.C. Admin. Code § 16-480. The Law thus requires those who placed the refrigerants in the appliances to remove them, and limits its reach to those manufacturers that placed their products in the stream of commerce in New York City.

11

In light of this direct and logical connection between the manufacturers and the refrigerants to be recovered, the Court cannot find that Local Law 69 is unreasonable.  While it may be true, as Plaintiff argues, that the manufacturers have no ownership or control over the appliances being discarded or that they are not guilty of any wrongdoing, these assertions do not negate the close nexus between manufacturers who sell or distribute cooling appliances in New York City and the need to dispose safely of refrigerants in the same manufacturers' appliances when they are discarded in New York City.

Plaintiff argues that Local Law 69 is unreasonable because the manufacturers may be charged for the City's servicing of their appliances that they sold or distributed outside New York City.  This argument fails for several reasons.  First, that the Law may incidentally embrace activities beyond the city limits does not render it unreasonable as a matter of law, especially given that Local Law 69 limits the manufacturers covered to those that have availed themselves of the New York City market for cooling appliances. *See id*; *Bakalar v. Lazar*, 336 N.Y.S.2d 695, 698-99 (Sup. Ct. 1972) (holding that City rules governing taxicab rides to destinations outside of the city are not invalid merely because they "incidentally embrace" activities outside of the city).  Second, even if such cases might conceivably arise with a frequency sufficient to raise a question of reasonableness, those facts are not before the Court on this motion.  Third, this argument is better raised in the context of Plaintiff's due process and Commerce Clause claims, which likewise are not before the Court on this motion.  Fourth, to the extent that Plaintiff's argument can be characterized as one of unconstitutional overbreadth, the Supreme Court has held that no overbreadth doctrine exists outside of the First Amendment and that a successful facial challenge to a statute requires the plaintiff to show that "no set of circumstances exists under which the [law

12

in question] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).[2]  Here, it is

undeniable that many of the appliances that the City will service pursuant to Local Law 69 had or

will have been sold or distributed in New York City, and as such would not raise the issue

contemplated by Plaintiff.  Thus, at least based on this argument, Plaintiff's facial challenge

would fail.

## II.     Preemption

        Plaintiff also moves for judgment on the pleadings on its first cause of action, preemption.

Plaintiff contends that even if Local Law 69 were a valid exercise of the City's police powers, it

is still invalid because it is expressly preempted by NYECL § 38-0107(3).  The Court grants

judgment in favor of Plaintiff on its preemption claim, but only to the extent that Local Law 69

seeks to govern the reclamation of certain CFC compounds.

        Preemption "represents a fundamental limitation on home rule powers," and "embodies

the untrammeled primacy of the Legislature to act . . . with respect to matters of State concern."

*Albany Area Builders Ass'n*, 546 N.E.2d at 922 (alteration in original) (internal quotation marks

omitted).  Where the state has evidenced its intent to preempt, whether expressly or implicitly, "a

local law regulating the same subject matter is deemed inconsistent with the State's transcendent

interest, whether or not the terms of the local law actually conflict with a State-wide statute."  *Id.*

        NYECL § 38-0107(3) provides that "[a]ny local law, ordinance, rule or regulation relating

---

[2] Although there has been some debate among the Justices of the Supreme Court about the
validity of the "no set of circumstances" standard, *see generally Congregation Rabbinical Coll. of
Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 613 n.18 (S.D.N.Y. 2013) (discussing
Supreme Court cases), it continues to be the law in the Second Circuit, which has cited it
affirmatively as recently as 2010.  *See Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 58 n.2
(2d Cir. 2010) (citing the "no set of circumstances" standard in a facial challenge to a zoning
law); *see also Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008) (citing the "no set of
circumstances" standard in a facial due process challenge).

to sale, use, reuse, reclamation, or disposal of [CFC] compounds must be identical to or the same as the provisions of this article and the rules and regulations adopted hereunder." N.Y. Envtl. Conserv. Law § 38-0107(3). Article 38 of the NYECL, in which the preemption provision is found, sets forth limitations on the sale, distribution and disposal of "aerosol spray can[s]," *id.* § 38-0105(3), "motor vehicle air conditioners," *id.* § 38-0107(1)(a)-(b), (d), "refrigerators used in retail stores, cold storage warehouse refrigeration systems, and air conditioning systems in large buildings," *id.* §§ 38-0103(11), -0107(1)(c), certain medical products, *id.* § 38-0107(2), and the handling of CFCs in these products. Nothing in Article 38 addresses residential appliances or assigns responsibility for the collection of their refrigerants. Thus, while Local Law 69 "relat[es] to . . . reclamation[] or disposal of [CFC] compounds," it is neither "identical to [n]or the same as" the provisions of NYECL Article 38. *Id.* § 38-0107(3). Construing the clear and unambiguous language of § 38-0107(3) to give effect to its plain meaning, *People v. Finnegan*, 647 N.E.2d 758,760 (N.Y. 1995), Local Law 69 is preempted.

None of the four cases cited by the City in support of its position that NYECL Article 38 does not preempt Local Law 69 compels a different result. *DJL Restaurant Corp. v. City of New York* was a case of implied preemption. 749 N.E.2d 186 (N.Y. 2001). Its holding that a City law governing zoning of "adult establishments" was not preempted by the state's comprehensive alcohol control law was premised on its finding that the two laws are "directed at completely distinct activities, . . . each involving an independent realm of governance." *Id.* at 191-92. The same is not true here, as both NYECL Article 38 and Local Law 69 concern, to a significant degree, the safe disposal of CFCs. In *Belle v. Town Bd. of Onondaga*, "the State ha[d] clearly expressed an intention not to occupy the field," 402 N.Y.S.2d 677, 679 (App. Div. 1978), which is not the case here in light of NYECL § 38-0107(3). Both *Huertas v. United Parcel Serv., Inc.*,

974 N.Y.S.2d 758 (Sup. Ct. 2013), and *Steel Inst. of New York v. City of New York*, 832 F. Supp.

2d 310 (S.D.N.Y. 2011), *aff'd*, 716 F.3d 31 (2d Cir. 2013), turned on the construction of the

express preemption clauses at issue respectively, and are thus irrelevant to the task at hand – i.e.,

the construction of NYECL § 38-0107(3).

   Although Local Law 69 is preempted to the extent that it regulates the collection of CFCs

within the scope of NYECL Article 38, the remainder of the Law continues to be valid and

enforceable. "Under New York law, a court should refrain from invalidating an entire statute

when only portions of it are objectionable." *Gary D. Peake Excavating Inc. v. Town Bd. of*

*Hancock*, 93 F.3d 68, 72 (2d Cir. 1996) (internal quotation marks omitted). The question is one

of legislative intent – i.e., "what [the lawmakers] would have intended had they foreseen that

their statute would be declared partially invalid." *Doyle v. Suffolk Cnty.*, 786 F.2d 523, 527 (2d

Cir. 1986), *superseded on other grounds*, 29 U.S.C. § 623(j). The analysis is a pragmatic one,

and as the Second Circuit has noted,

> legislative policy should be given effect unless application of the portion of a
> statute remaining after partial invalidation yields results that [lawmakers] seem[]
> unlikely to have wanted or if the remaining portion is such a minor fragment of a
> comprehensive provision as to make it likely that [lawmakers] would prefer either
> no provision or the opportunity to craft a new one.

*Gen. Elec. Co. v. N.Y. State Dep't of Labor*, 936 F.2d 1448, 1460 (2d Cir. 1991) (quoting *Doyle*,

786 F.2d at 527).

   At the outset, "[t]here is a presumption that [lawmakers] would prefer the portion

remaining after partial invalidation to continue in effect." *Doyle*, 786 F.2d at 528. Moreover, the

presumption is reinforced by the presence of a broad severability clause. *Id.* Here, the New York

City Administrative Code contains a broad severability clause of general applicability, N.Y.C.

Admin. Code § 1-150, which is echoed in a similarly worded severability clause specifically

within Local Law 69, *id.* § 16-486.  Moreover, based on the limited record that the Court is authorized to consider on a motion for judgment on the pleadings, there is no basis to conclude that Local Law 69 as limited by the NYECL cannot function as intended with respect to refrigerants outside the scope of the NYECL.  Article 38 of the NYECL defines CFC compounds as "one or more of the following substances used alone or in combination with other compounds: CFC-11, CFC-12, CFC-113, CFC-114, or CFC-115."  N.Y. Envtl. Conserv. Law § 38-0103(1).  Thus, Local Law 69 shall continue to be valid and enforceable insofar as the refrigerants to be recovered thereunder do not use compounds containing CFC-11, CFC-12, CFC-113, CFC-114 or CFC-115.[3]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED on its preemption claim, but only with respect to certain CFC compounds as specified above. The motion is otherwise DENIED in all respects.

SO ORDERED.

Dated: July 29, 2014
      New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

---

[3] Under Local Law 69, refrigerants include "any substances consisting in whole or in part of a class I or class II ozone-depleting substance, which are used for heat transfer purposes and provide a cooling effect . . . ."  N.Y.C. Admin. Code § 16-480.  For its definition of "class I or class II ozone-depleting substance," the Law refers to § 602 of the Clean Air Act.  In addition to the five CFC compounds covered by Article 38 of the NYECL, the Clean Air Act – and by extension Local Law 69 – also covers the following CFC compounds: CFC-13, CFC-111, CFC-112, CFC-211, CFC-212, CFC-213, CFC-214, CFC-215, CFC-216 and CFC-217.  42 U.S.C. § 7671a(a).  These additional CFC compounds covered by Local Law 69 but not by Article 38 of the NYECL are not preempted by NYECL § 38-0107(3), so long as the former are not used in combination with the latter.